UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 1:18-mc-24802

PRISCILLA RAINEY,

    Plaintiff,

v.

JAYCEON TERRELL TAYLOR,

    Defendant.

_____/

## MOTION FOR RECONSIDERATION

Pursuant to Rule 60 of the Federal Rules of Civil Procedure, Defendant Jayceon Terrell Taylor ("Taylor" or "Defendant"), by and through undersigned counsel, requests that this Court reconsider its September 5, 2019 order [DE 25]

## FACTS

1. This is an action that stems from a judgment that was entered in the Northern District of Illinois on or around November 18, 2016 (the "Original Judgment").

2. The original judgment was timely appealed to the Seventh Circuit Court of Appeals (the "7th Circuit")

3. Oral argument took place before the 7th Circuit in Chicago, Illinois on March 25, 2019.

4. On February 26, 2019, Plaintiff filed Plaintiff's Motion to Compel The Williams Law Group, P.L.L.C.'s Compliance with Subpoena for Deposition Duces Tecum (the "Motion to Compel").

5. The Motion to Compel was never noticed for hearing and no hearing date was ever set.

6. On March 25, 2019, the undersigned represented the Defendant in his appeal.

1

7. Also on March 25, 2019, this Court entered an order granting the Plaintiff's Motion to Compel The Williams Law Group, P.L.L.C.'s Compliance with Subpoena for Deposition Duces Tecum (the "Motion to Compel").

8. On May 22, 2019, the undersigned appeared for his deposition at the offices of Plaintiff's Counsel, Sequor Law, as ordered by this Court.

9. On June 20, 2019, Plaintiff filed a Motion for Contempt and to Compel Better Answers (the "Motion to Compel") related to the undersigned's deposition.

10. On July 8, 2019, the Defendant, through the undersigned, filed an Opposition to the Motion to Compel.

11. One of the key arguments made in the Opposition was that the purported transcript of the undersigned's deposition was flawed and most importantly inaccurate as it failed to include testimony that the undersigned unequivocally testified to.

12. The Opposition was supported by two declarations that were sworn to under penalty of perjury, including one from the undersigned himself.

13. It should also be noted that the Defendant specifically requested that this Court hold a hearing on the Motion to Compel as the undersigned anticipated the motion to be hotly disputed.

14. The declarations supported the undersigned's claim that the attached transcript that was attached to the Motion to Compel was inaccurate and therefore it should not be relied upon since it failed to include statements that were made on the record by the undersigned.

15. On July 15, 2019, the Plaintiff filed a Reply to the Defendant's Opposition.

16. On September 5, 2019, this Court entered an Order on the Motion to Compel [DE 25].

17. Pursuant to the September 5, 2019 Order [DE 25] this Court relied upon the contested

deposition transcript, notably without any evidentiary hearing, and in turn ordered the undersigned to appear for his deposition on September 26, 2019 at 10:00 am at the James Lawrence King Justice Building and to provide payment to Plaintiff in the amount of $750.00 as a sanction for fees incurred for the taking of the first deposition.

18. The Defendant contends this Court's Order was made in error and/or mistake, and that this Court's reliance on the disputed transcript, without any evidentiary hearing or hearing any testimony, when it was contested by the undersigned, an officer of the Court in good-standing, was improper/an abuse of discretion that prejudiced the undersigned and the Defendant.

19. The undersigned, nonetheless intends to appear at the Court ordered deposition on September 26, 2019; however, the issue of sanctions, the determination that the Defendant's answers were frivolous and/or in bad-faith, and this Court's assessment that the Opposition was untimely are all disputed and still ripe for this Court's determination notwithstanding, the undersigned's compliance and attendance at the September 26, 2019 deposition.

20. This motion is made in good-faith and is timely under Rule 60(b).

21. **WHEREFORE**, the Defendant respectfully requests that this Court reconsider the sanctions element of its September 25, 2019, as well as the other findings that have been contested by the Defendant.

## LEGAL STANDARD

A motion for reconsideration may be brought pursuant to Rule 59(e) or Rule 60(b). *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (*quoting Lewis v. United States Postal Service*, 840 F.2d 712, 713 n. 1 (9th Cir. 1988)).  Under which Rule the motion falls "turns on the time at which the motion is served. If the motion is

served within ten days of the rendition of the judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.*

A motion for reconsideration is the appropriate mechanism for a party seeking to "correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F.Supp.2d 1366, 1369 (S.D. Fla. 2002) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)).  The applicable legal standard "for a motion for reconsideration is that the moving party 'must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.'" *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F.Supp.2d 1340, 1348 (S.D. Fla. 2007) (citing *Socialist Workers Party v. Leahy*, 975 F. Supp. 1262, 1263 (S.D. Fla. 1997). Courts have put forth three major grounds that justify reconsideration.  Those grounds are "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or [prevent] manifest injustice." *Id*. at 1343.

The Defendant submits that this motion is not based on an intervening change in controlling law, nor the availability of new evidence and therefore the discussion of this matter will be limited to the third ground, "the need to correct clear error or prevent manifest injustice," and the fact that the public interests is served through granting this motion for reconsideration.

## ARGUMENT

**I. The Motion for Reconsideration Should be Granted to Prevent Manifest Injustice**

Given the allegations of the inaccuracies in the transcript, this Court's admitted reliance upon the transcript in its Order [DE 25], the fact that the Opposition was in fact timely submitted, and the presence of many ambiguously asked deposition questions, this Court should

grant the Defendant's Motion for Reconsideration in order to prevent a manifest injustice of the law.

### A. The Deposition Transcript That was Relied Upon by this Court was Inaccurate

As alleged in the Opposition and attached Declarations, of Andrew Williams, Esq. and Demyana Boshra, the deposition transcript that was relied upon by this Court, and submitted by the Plaintiff, is flawed and inaccurate. The undersigned is able to cite to at least one portion of the transcript where he can unequivocally state that testimony, which he *testified* to, is missing! If the undersigned can unequivocally allege and identify at least one area of the transcript that failed to capture his testimony than the sufficiency of the entire deposition transcript *must* be questioned.

The undersigned is not alleging that the missing testimony consisted of a simple missing word or phrase, but rather an entire dialogue! If the undersigned can easily identify missing dialogue in one portion of the transcript, the transcript must then be scrutinized as it only logically follows that there are surely other areas, which are also missing that the undersigned could not identify as easily.

The inaccuracy referred to by the undersigned can be found between pages 13 and 14 of the deposition transcript [DE 17-2]. Beginning on page 13:18 of the deposition transcript, the dialogue goes as follows:

> **Williams**: There was not parking provided, and therefore I had to spend another additional 10 to 15 minutes for parking in the Brickell area, which is heavily populated and heavily congested.
>
> **Beard**: There's a parking lot right in the building.

Pg 14:1

**Beard**: Mr. Williams did you have a hearing today?

The undersigned unequivocally retorted a rhetorical question to Beard after she snidely informed him that "there's a parking lot right in the building." The retort was something to the effect of '*and were you going to pay for it.*' This phrase is remarkably missing from the deposition transcript despite the fact that both the undersigned and Ms. Boshra provided declarations under penalty of perjury indicating that such a statement was made. Given the dispute and discrepancies associated with the deposition transcript it was wholly improper for this Court to rely upon the sufficiency of the deposition transcript without at least holding an evidentiary hearing. The undersigned, who is an officer of the Court, certainly is qualified and is deserved of the respect of this Court to have such a strong allegation entertained. This Court however failed to even address this argument when it entered its Order [DE 25].

### B. The Court's Failure to Hold an Evidentiary Hearing on the Disputed Deposition Transcript was Improper

In order "to be entitled to an evidentiary hearing, a [party] need only *allege*-not prove-reasonably, specific, non-conclusory facts that, if true, would entitle him to relief." *Richitelli v. U.S.*, 09-60229-CR-COHN, 2013 WL 1289164, at *1 (S.D. Fla. Mar. 28, 2013). "If the allegations are not *affirmatively* contradicted by the record and the claims are not *patently frivolous*, the district court is **_required_** to hold an evidentiary hearing." *Id*. Courts are to decide "contested fact[ual] issues […] on the basis of an evidentiary hearing, not affidavits." *Id*. (internal citations omitted). Furthermore, "the parties **_must_** be allowed an evidentiary hearing […] when there is a genuine issue as to the existence of a term or an agreement."

Here, the undersigned alleged that the deposition transcript did not contain portions of his testimony.  The undersigned cited to at least one part of the deposition transcript where his testimony on the record was omitted.  The undersigned supported his assertion with two declarations, including his own.  The allegations made by the undersigned relating to the inaccurate were "*specific*, non-conclusory facts that, *if true*, would entitle him to relief."

Additionally, the Defendant's allegations are not "*affirmatively* contradicted by the record" and the Defendant's claims "are not *patently frivolous*," therefore the district court is/was **_required_** to hold an evidentiary hearing.  The District Court not only failed to hold any evidentiary hearing, it apparently failed to even consider the claims made by the undersigned and admittedly relied upon the inaccurate deposition transcript when issuing its Order [DE 25] despite being required to hold such an evidentiary hearing.

Whether or not the deposition transcript that was submitted to the Court [DE 17-2] is, or is not, accurate is a contested factual issue.  It is also one with glaring implications.  If the deposition transcript is flawed, then naturally, so is this Court's reliance upon it.  If the deposition transcript is accurate, than this Court's reliance on it may have been appropriate; however, considering that the issue of the deposition transcript is a "contested fact[ual] issue," it should have been decided  upon on "the basis of an evidentiary hearing."

### C. Defendant Timely Submitted the Opposition

According to Rule 6(a)(1) of the Federal Rules of Civil Procedure, if a deadline falls on "a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1).

The Court ordered the Defendant to file the Opposition on or by July 5, 2019. According to this Court's *own* holiday schedule as listed on its *own* website, July 5, 2019 was a federal holiday and the Court was closed. *See* Exhibit "**A**".

While this aspect is not directly at issue, the Defendant provides the legal discussion on this aspect of the Court's order in an effort to respond to Footnote #1 of the Order [DE 25] and to reclaim any associated good-will that the Defendant previously had with this Court regarding timeliness and deadlines. While the Defendant has no intention of missing any *Court-mandated* deadlines, the Defendant points this out, so that should the Defendant actually miss a deadline he has not lost any favor with the Court.

### D. The Undersigned's Assertions About the Ambiguous Nature of Various Questions Were Not Made in Bad-Faith

Contrary to the assertions made by this Court in its Order [DE 25], the undersigned's contentions that many questions asked by counsel for the Petitioner during the May 22, 2019 deposition were ambiguous and such contentions were made in good-faith. In its Order, this Court specifically cited to a paragraph from the Defendant's Opposition [DE 22] and attempted to use said paragraph to evidence the fact that the undersigned acted in bad-faith by failing to answer a "clear" question. This Court suggested in its order that seemingly simple questions cannot have multiple meanings and/or interpretations. This Court even went as far as to use the the example of a person being "asked how long they have been dating their sweetheart" as a dispositive example of a clearly asked question that "one would hope that the individual [answering the question] would not require a dictionary or encyclopedia to provide a meaningful answer." *See* [DE 25, pg 5-6].

Again, contrary to this Court's assertion, it is the undersigned position that such an example directly proves the undersigned's entire point! The undersigned is a millennial, and like

8

many, if not most millennials, the very term "dating" is ambiguous and unclear. After all what does it mean to date? Is it when you first go to dinner, is it hanging out, is it when a couple has their first kiss, is it when they are intimate for the first time, or is it when they agree to be in an exclusive relationship? The undersigned, if asked such a question, would absolutely seek clarification in order to answer what is a seemingly simple, but highly ambiguous question. *See* Declaration of Andrew Williams, Esq. attached hereto as Exhibit "**B**". The undersigned went as far as taking it upon himself to ask multiple people: friends, family members and total strangers what their definition of dating was, and he received starkly different answers which drastically varied in type from those he asked. *Id*.

The undersigned expresses this point in order to show that the very example he used in his Opposition, one in which this Court scoffed at ("how long has your paralegal worked for you?"), is not as clear of a question as this Court may believe it to have been and that the clarifications that the undersigned sought relating to various questions that were asked of him were in fact made with good reason and in good-faith.

## CONCLUSION

Based on the foregoing points, authorities, and statutes, this Court should reconsider and vacate the sanctions element of its September 5, 2019 Order [DE 25].

**WHEREFORE** Defendant, Jayceon Terrell Taylor, respectfully requests that this Court enter an order granting his Motion for Reconsideration of this Court's September 5, 2019 Order, vacating the sanctions that were awarded against the undersigned, determining that the Defendant through the undersigned complied, or at least substantially complied with its order, and enter a finding that the deposition transcript on the record [DE 17-2] is inconclusive for the

9

Court to rely upon as fact based upon the reasons stated above, and granting any such other relief as this Court may find appropriate.

Dated: September 25, 2019                    s/Andrew Williams

                                         THE WILLIAMS LAW GROUP
                                        Andrew Williams
                                        *Attorney for Defendant*
                                        6273 Sunset Drive, Suite D-3
                                        South Miami, FL 33143
                                        Telephone:  (253) 970-1683
                                        FL Bar No. 0111817
                                        Email:  Andrew@TheWilliamsLG.com
                                        Secondary Email: WilliamsLawFlorida@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all parties and counsel of record, and on the service list below, through the CM/ECF filing system this 25th day of September 2019.

## SERVICE LIST

Christina Vicens Beard (Fla. Bar No. 111357)
SEQUOR LAW
1001 Brickell Bay Drive
9th Floor
Miami, Florida 33131
Telephone: 305-372-8282
E-mail: cvicens@sequorlaw.com